UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARIA TORTORELLA,               :
      Plaintiff                  :
                            :
vs.                        :      **C.A. No.:**
                            :
COMPUTER SCIENCES CORPORATION and   :
DXC TECHNOLOGY SERVICES LLC,       :
      Defendant                :

## COMPLAINT

### I. Introduction

This is an action brought by the Plaintiff seeking declaratory and injunctive relief and other equitable relief, as well as compensatory, punitive, and liquidated damages, attorneys' fees and other litigation expenses to redress unlawful sex discrimination the Plaintiff suffered in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §201, *et seq.* incorporating therein the Equal Pay Act, 29 U.S.C. §206(d) ("EPA"), the Rhode Island Wage Discrimination Act, R.I.G.L. §28-6-17, *et seq.* ("RIWDA"), and the Rhode Island Civil Rights Act, R.I.G.L. §42-112-1, *et seq.* ("RICRA").

### II. Parties

1. The Plaintiff is a female who resides in the City of Cranston, County of Providence, State of Rhode Island.

2. Defendant Computer Sciences Corporation ("CSC") is a Nevada corporation with its principal place of business located in Tysons, Virginia.

3. Defendant DXC Technology Services LLC ("DXC") is a Delaware corporation with its principal place of business located in Wilmington, Delaware.

4. In or about April, 2017, Defendant CSC merged with HP Enterprise Services and formed a new business entity known as Defendant DXC. As a result of the business merger, Defendant DXC is the successor in interest of all legal rights and obligations of Defendant CSC as it pertains to the within matter.

### III. Jurisdiction

6.      This Court has jurisdiction over the Plaintiff's claims pursuant to 29 U.S.C. §216.

### IV. Venue

7.      Venue is proper in this Court in accordance with 28 U.S.C. §1391.

### V. Material Facts

8.   In 1991, the Plaintiff was hired by Defendant CSC.

9.      Thereafter, the Plaintiff was promoted several times during her employment at Defendant CSC.

10.      During her employment at Defendant CSC, the Plaintiff supported the company's premier client account, General Dynamics Corporation.

11.      At the time of her termination in July, 2017, the Plaintiff was employed as an IT Contract/Subcontract Manager.

12.      During all relevant time periods, Plaintiff's work performance was satisfactory and met Defendant CSC's legitimate expectations.

13.      Throughout the Plaintiff's employment at Defendant CSC, on account of her gender, the Plaintiff was paid less than male employees of CSC, including, but not limited to, Tim Dreher, Jeremy Pohlan, Alan Cadoo, and Shad Stewart, who were employed in similar positions as the Plaintiff.

14.      Beginning in 1998, the Plaintiff began to inquire with Defendant CSC's human resource department about her disparate salary relative to employees being hired at market rate.

15.      Following this complaint to human resources, Van Athanas, Regional Human Resources Director, advised the Plaintiff that she was grossly underpaid and submitted a request to Dennis McCabe, Vice President of Human Resources, relative to a salary increase.

16.     Mr. McCabe authorized an annual salary increase of $7,000.00, which was $10,000.00 less than Mr. Athanas had requested.

17.     At that time, Mr. Athanas told the Plaintiff that she was unable to receive a more substantial pay increase because Defendant CSC maintained an unwritten "10% rule," whereby Defendant CSC would not provide a salary increase for an employee greater than 10% of the employee's current salary unless such employee was transferred to a different unit/organization within CSC or promoted.

18.     As a result of Defendant CSC's "10% rule," the Plaintiff was paid significantly below market rate during her employment at CSC. In 2001, because the Plaintiff was underpaid for her position, she lost a job opportunity to work at Gulfstream Aerospace ("Gulfstream"). Gulfstream offered the Plaintiff to work on-site at the company (while employed at CSC) if the Plaintiff agreed to relocate and further offered to supplement her salary to market level above what Defendant CSC was paying her at the time. However, because the Plaintiff's salary was so low compared to market salary, Gulfstream would have had to pay more than it expected. As a result, Gulfstream did not offer the Plaintiff direct employment at the company.

19.     In or about 2007/2008, Tom Signorello, the General Dynamics account executive at Defendant CSC, requested that the Plaintiff be assigned to his team as a Contracts Manager to replace the outgoing male Contracts Manager. During the interview process for this position, the Plaintiff discovered that the former male Contracts Manager's annual salary was $98,000.00. At that time, the Plaintiff earned $65,000.00 per year.

20.     The Plaintiff was not offered the position at the comparable salary of the former male Contracts Manager; thus, she did not accept the position.

3

21.    In 2008, the Plaintiff's annual salary was increased.    However, the Plaintiff discovered that she still earned approximately $12,000.00 less than a similarly-situated male employee, Tim Dreher.

22.    The Plaintiff and Mr. Dreher's employment positions at Defendant CSC required equal skill, effort, and responsibility and were performed under similar working conditions.

23.    In 2010, after a few years of Defendant CSC offering the Plaintiff the position of Contracts Manager for the General Dynamics account without an increase in her salary, the Plaintiff finally accepted the position.    She only received a $5,000.00 increase to her annual salary.

24.    In 2010, Bruce Blakeslee, the Contracts Director for the General Dynamic account, spoke with the Plaintiff about her assuming his position at Defendant CSC upon his retirement.

25.    The Plaintiff told Mr. Blakeslee that she was resistant to accept his role due to the increase in responsibility and the refusal of Defendant CSC to increase her salary more than 10%.

26.    Defendant CSC later hired Paul White to replace Mr. Blakeslee as Contracts Director.

27.    In 2011, Defendant CSC hired Jeremy Pohlan as a Contract Manager.

28.    In January, 2014, Defendant CSC released a new organizational chart for the Plaintiff's organization at CSC

29.    The organizational chart had a different title for the Plaintiff compared to similarly-situated male employees, who performed the same work and maintained the same responsibilities, including Jeremy Pohlan.

30.    In September, 2014, the Plaintiff began reporting to a different supervisor, Uche Ikeme.

31.    The Plaintiff questioned Mr. Ikeme about the difference between her title and the titles of her male counterparts.

4

32.    At or about this same time period, the Plaintiff discovered that her title was different than similarly-situated male employees in the organization chart because employees were provided titles based upon salary ranges. The Plaintiff's new title was commensurate with lower-tiered and lower salaried employees at Defendant CSC, while her male counterparts were given titles commensurate with higher salaried employees.

33.    Upon making this discovery, the Plaintiff contacted Mr. White, via text message, and inquired about Mr. Pohlan's current salary. Mr. White told the Plaintiff that Mr. Pohlan earned between $115,000.00 and $118,000.00 per year. At that time, the Plaintiff earned approximately $78,000.00 per year.

34.    The Plaintiff and Mr. Pohlan's employment positions at Defendant CSC required equal skill, effort, and responsibility and were performed under similar working conditions.

35.    During this text message exchange, the Plaintiff also told Mr. White that she believes the pay disparity was due to her gender.

36.    Throughout the remainder of 2014 and into 2015, the Plaintiff spoke with Mr. Ikeme about her job title and salary and that she was underpaid.

37.    During this same time period, the Plaintiff also conferred with human resources personnel at Defendant CSC, including Patty Calise and Dee Butterfield, about her pay discrepancy.

38.    In March, 2015, Mr. Ikeme told the Plaintiff that her relationship with management-level employees was becoming strained because the Plaintiff was becoming "obsessed about [her] salary and title and it was affecting [her] performance and attitude."

39.    In June, 2015, the Plaintiff was offered a position at CSC on a different account for General Dynamics known as Land Systems.

40.    The Plaintiff sent a text message to the newly assigned Contracts Lead for the Land Systems account, Jada Pierce, about a title change and salary increase.

41.    Ms. Pierce never responded to the Plaintiff.

42.    The Plaintiff later received a telephone call from Mr. Ikeme.  During this call, Mr. Ikeme berated the Plaintiff and told her to cease making inquiries about her salary and title, that her pay would be set by Defendant CSC, and told the Plaintiff the offer was basically "this or nothing."

43.    As a result of Mr. Ikeme's conduct, the Plaintiff commenced a medical leave in June, 2015.

44.    Upon her return from medical leave in February, 2016, the Plaintiff was assigned to a different account.

45.    The Plaintiff later learned that Shad Stewart was hired as the Contracts Manager for Land Systems.  On information and belief, he was paid a much higher salary than the Plaintiff.

46.    The Plaintiff and Mr. Stewart's employment positions at Defendant CSC required equal skill, effort, and responsibility and were performed under similar working conditions.

47.    In August, 2016, Mr. Ikeme issued the Plaintiff an unsatisfactory mid-year performance review on account that she continued to report unfair pay practices at Defendant CSC.

48.    In July, 2017, the Plaintiff was terminated from her position at Defendant CSC.

49.    On information and belief, Alan Cadoo, who was employed at Defendant CSC as a Contracts Manager, earned a higher salary than the Plaintiff, despite that the Plaintiff and Mr. Cadoo's employment positions at Defendant CSC required equal skill, effort, and responsibility and were performed under similar working conditions.

50.    Due to the discrepancy in pay between the Plaintiff and her male counterparts as described above, the Plaintiff complained to management-level employees at Defendant CSC.

51.    The purported reason(s) given by Defendant CSC for the inconsistent pay rates was that the male counterparts had more skill, expertise, and responsibility than the Plaintiff.

6

52. Defendant CSC's rationale for the aforementioned inconsistent rate of pay was a pretext for gender discrimination.

53. As stated above, the Plaintiff was treated differently than similarly-situated male employees at Defendant CSC.

54. That Defendant CSC subjected the Plaintiff to discrimination on the basis of her sex.

55. The actions and/or omissions of Defendant CSC, including, but not limited to, those described herein, constitute unlawful employment discrimination in violation of the EPA, the RIWDA, and the RICRA and were negligent, intentional, willful, malicious, and/or with reckless and callous indifference.

56. As a proximate result of Defendant CSC's discriminatory acts and/or omissions, including, but not limited to, those described herein, the Plaintiff has suffered and will continue to suffer loss of income, including future salary, pension benefits and other great harm and has and continues to be deprived of her rights secured under the EPA the RIWDA, and/or the RICRA.

### VI. Claims for Relief

57. The Plaintiff incorporates the allegations contained in ¶¶1 through 56 above in the counts set forth below.

### Count One
### Violation of EPA, 29 U.S.C. §206

58. The Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, violated the EPA, thereby causing the Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to 29 U.S.C. §216(d).

### Count Two
### Violation of RIWDA, R.I.G.L. §28-6-17, *et seq.*

59. The Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to, those described herein, violated the RIWDA, thereby causing the

Plaintiff to suffer damages as aforesaid, for which she is entitled to relief pursuant to R.I.G.L. §28-6-20

### Count Three
### Violation of RICRA, R.I.G.L. §42-112-1, *et seq.*

60.     The Defendants, by their individual and/or concerted acts and/or omissions, including, but not limited to, those described herein, constitute unlawful employment discrimination against the Plaintiff on account of her sex in violation of the Rhode Island Civil Rights Act of 1990, causing the Plaintiff to suffer damages as aforesaid and thereby deprived the Plaintiff of rights secured under the Rhode Island Civil Rights Act of 1990.

### VII. Prayers for Relief

**WHEREFORE**, the Plaintiff respectfully prays that this Court grant the following relief:

1.     a declaratory judgment declaring that Defendants willfully violated the Equal Pay Act and the Rhode Island Wage Discrimination Act;

2.     in the alternative, a declaratory judgment declaring that the Defendants violated the Equal Pay Act and the Rhode Island Wage Discrimination Act in the manner complained of herein;

3.     a declaratory judgment declaring that the Defendants violated the Rhode Island Civil Rights Act in the manner complained of herein;

4.     enjoining and permanently restraining the Defendants from violating the Equal Pay Act, the Rhode Island Wage Discrimination Act, and Rhode Island Civil Rights Act;

5.     an award of back pay, including incremental increases, pension rights and other benefits, plus prejudgment interest thereon;

6.     an award of compensatory damages;

7.     an award of punitive damages;

8.     an award of liquidated damages pursuant to 29 U.S.C. §216(b) and R.I.G.L. §28-6-20;

8

9. an award of reasonable attorneys' fees and costs of litigation;

10. an award of other appropriate equitable relief pursuant to 29 U.S.C. §216(b); and,

11. such other and further relief as the Court deems just and proper.

## VIII. Demand for Jury Trial

The Plaintiff hereby demands a trial by jury on all counts so triable.

## IX. Designation of Trial Counsel

The Plaintiff hereby designates V. Edward Formisano, Esquire and Michael D. Pushee as trial counsel.

PLAINTIFF,
By her attorneys,
FORMISANO & COMPANY, P.C.

Dated: May 21, 2018

/s/ V. Edward Formisano
V. Edward Formisano (#5512)
edf@formisanoandcompany.com

/s/ Michael D. Pushee
Michael D. Pushee (#6948)
100 Midway Place, Suite 1
Cranston, RI 02920-5707
(401) 944-9691
(401) 944-9695 (facsimile)
mpushee@formisanoandcompany.com

## CERTIFICATION

I hereby certify that on the 21st day of May, 2018, I caused the within to be electronically filed with the Clerk of the U.S. District Court for the District of Rhode Island using the CM/ECF System.

/s/ V. Edward Formisano

9