UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| MARIA TORTORELLA,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     C.A. No. 18-273WES |
| | : |
| COMPUTER SCIENCES<br>CORPORATION and DXC<br>TECHNOLOGY SERVICES, LLC,<br>    Defendants. | :<br>:<br>:<br>: |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

On May 21, 2018, Plaintiff Maria Tortorella filed this gender-based wage discrimination case against her former employer, Computer Sciences Corporation ("CSC") and its parent, DXC Technology Services, LLC ("DXC"). Her three Count complaint alleges that CSC violated the Federal Equal Pay Act, 29 U.S.C. § 206 ("EPA"); the Rhode Island Wage Discrimination Act ("RIWDA"), R.I. Gen. Laws § 28-6-17, *et seq.*; and the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1, *et seq.* Compl. ¶¶ 58-60. Throughout the pleading and discovery phases of the case, Plaintiff was represented by experienced employment law counsel. On the brink of the close of discovery, on June 13, 2019, over Defendants' objection, her attorney was permitted to withdraw. Since then, Plaintiff has been *pro se*. On September 30, 2019, with discovery completed, Defendants timely filed a motion for summary judgment based on the evidence developed during discovery, which establishes that the four male CSC employees that Plaintiff identified as "comparators" earning more than she was paid not only did not perform work equal to that performed by Plaintiff, but also had credentials (particularly academic degrees and experience) that materially exceeded Plaintiff's educational and

experiential achievements, which amounted to non-pretextual, non-gender-based reasons for the unequal pay.

Plaintiff failed to file any response to the motion by the deadline established by the Court. After the motion was referred to me, mindful of the leniency required for any *pro se* litigant, Instituto de Educacion Universal Corp. v. U.S. Dep't of Educ., 209 F.3d 18, 23 (1st Cir. 2000), I issued a show cause order warning Plaintiff that her failure to respond to the motion could result in the entry of summary judgment without a trial. On the new deadline (December 26, 2019) set by the Court, Plaintiff filed a response to the show cause order that included her summary of her arguments in opposition to the motion, although she did not provide the Court with any factual evidence to buttress them. ECF No. 38. The Court accepted her filing as her opposition to the motion and directed Defendants to reply. They have done so. ECF No. 39. On the brink of my issuance of this report and recommendation, Plaintiff filed a sur-reply captioned, "Plaintiff's Reply Opposing Motion for Summary Judgment." ECF No. 40. Although this filing is not contemplated by the Local Rules and normally would be considered only with prior leave of Court, DRI Lr Cv 7(a)(5), because Plaintiff is *pro se*, I have considered it and incorporated it into my analysis.

## I. BACKGROUND

Plaintiff's only post-high school credential is a two-year associate's degree from the Community College of Rhode Island earned in 1985. DSUF ¶ 6; ECF No. 35-3 at 5.[1] While she has since taken courses at the University of Rhode Island, she never completed even a bachelor's

---

[1] In support of the motion for summary judgment, Defendants submitted a statement of undisputed facts with copies of the referenced evidence, including excerpts from Plaintiff's interrogatory answers and deposition. ECF No. 35 ("DSUF"). Plaintiff submitted no evidence at all. Nevertheless, in light of her *pro se* status, the Court has scoured Defendants' submissions for facts permitting inferences favoring Plaintiff as required for a Fed. R. Civ. P. 56 motion.

2

degree; she believes these courses amounted to the equivalent of a law degree. See ECF No. 35-3 at 37 ("I looked at what classes were associated with anything to do with the role of a contracts manager at CSC, and most of the classes cover litigation and criminal law, and they didn't focus more on contract or business law no more than what I got from URI in my business law classes."). A few years after she finished her formal education, Plaintiff began working at a division of General Dynamics as an "engineering assistant" doing "the procurement of IT," where she remained from 1989 until she was laid off in 1991. DSUF ¶ 7; ECF No. 35-3 at 5-6. In 1992, she began working at CSC in connection with the contracting function in the United States, on a single account, General Dynamics, under supervision by an employee higher in the CSC hierarchy. DSUF ¶¶ 8-9. In 2010, she became a contract manager on the General Dynamics account; in 2013, her position was retitled as "professional contracts." DSUF ¶ 11; ECF No. 35-3 at 11. While she knows that account very well, she had no other relevant work experience. See ECF No. 35-3 at 10 ("I understood the structure of the GD account, which was one of the most difficult things . . . .").

During the period in issue here, Plaintiff's job title was "professional contracts," which is the lowest level position in the contracting management hierarchy. DSUF ¶¶ 9, 13. A substantial portion of Plaintiff's time was spent on the procurement oversight function for General Dynamics. DSUF ¶¶ 18-20. Throughout her many years of employment at CSC (longer than the comparators), until 2015, she worked only on one account but never as the sole manager of it, her work was always performed under supervision and she never had supervisory responsibilities. DSUF ¶¶ 21, 63, 65. Plaintiff had no experience in dealing with contracts in Canada. DSUF ¶¶ 37, 40, 42, 45, 48. At various points prior to 2013, the supervisor for whom she had worked from the beginning until 2013 told her that if she ever finished her bachelor's

3

degree, her salary would increase by $5,000,[2] as well as that her pay could not increase by more than 10% per year according to a CSC policy, so that it would take years to reach parity with the comparators. ECF No. 35-3 at 19, 23-24. Her post-2013 supervisor also "parroted" these "policies" back to her. ECF No. 35-3 at 24.[3]

Plaintiff worked on the General Dynamics account until May 2015, when she took a six-month leave. DSUF ¶¶ 23-24. After her return, Plaintiff was eventually assigned to a different account, reporting to a female supervisor whose job title was the next step up in the CSC hierarchy. DSUF ¶¶ 25-26. On July 14, 2017, Plaintiff was terminated by CSC.[4] DSUF ¶ 27; see ECF No. 35-3 at 19 ("I was on the layoff list."). The complaint makes no allegation based on the reason for the termination of her employment.

Plaintiff's case is laser-focused on the material differential between her compensation and the higher compensation paid to four co-workers, referred to as the "comparators." ECF No. 35-1 at 3-5 (Plaintiff's answers to interrogatories). She believes that her employment experience – working on the General Dynamics account in the early years alone with her supervisor ("it was just me and Bruce really until 2010," ECF No. 35-3 at 10) – and the courses she has taken (albeit never accomplishing the completion of a degree higher than an associate's from a community college) should have resulted in the payment of a salary comparable to what CSC paid colleagues with dramatically better credentials. Apart from her belief, Plaintiff has presented no evidence to buttress this claim; rather, she conceded that, since 2007, she had worked from home

---

[2] It is not disputed that this amount would not bridge the gap between her pay and that of the comparators.

[3] CSC denies that it has a policy capping salary increases at 10% of the prior year's salary. For purposes of this motion, it is accepted as true based on Plaintiff's testimony.

[4] Two of the CSC employees identified by Plaintiff as comparators were also terminated in the latter part of 2017. DSUF ¶¶ 50, 74. The other two left CSC in April and October 2015 respectively. DSUF ¶¶ 64, 85. Defendants argue that these two fall outside the period covered by the applicable statute of limitations; as noted infra, n.9, I do not reach this argument.

4

and has no first hand knowledge regarding how the comparators' compensation and responsibilities were set or the caliber of their work. DSUF ¶¶ 28-33.

The unrebutted record proffered by Defendants' summary judgment motion establishes that each of the comparators came to CSC with materially different experience and materially different credentials and performed materially different and more responsible work. For example, one had both a bachelor's degree and a law degree and experience as a contracts attorney and in contract management at other entities, was working several levels above Plaintiff in the contracting hierarchy, was entirely responsible for management of the General Dynamics account and supervised other employees (including Plaintiff herself for a period of time). DSUF ¶¶ 51-65. A second comparator worked in United States contracting two levels above Plaintiff and had a bachelor's degree, law degree and Master of Business Administration and work experience in senior contract administration at another entity; he fully managed a major account relationship and also worked on the General Dynamics account. DSUF ¶¶ 66-74. The third comparator has a bachelor's degree and Master of Business Administration and experience as a contract manager at another entity, supported multiple contracts and was responsible for negotiating all aspects of a substantial relationship; his job title placed him at a level above Plaintiff in the CSC hierarchy. DSUF ¶¶ 75-85. The fourth comparator did not work in the United States; he worked on CSC contracting in Canada on multiple accounts whose management implicated the laws of Canada. DSUF ¶¶ 36, 39, 44. This comparator has the equivalent of a bachelor's degree from a university in Montreal and extensive contract management experience at other entities and at CSC in Canada with a job title above Plaintiff in the contracting hierarchy. DSUF ¶¶ 34-50. With one exception,[5] none of the comparators

---

[5] One comparator (who has a bachelor's and law degree, supervised others, including Plaintiff, had extensive contract management experience working at entities other than CSC and was responsible for management of the

performed the procurement oversight function that occupied a substantial percentage of Plaintiff's time. DSUF ¶¶ 18-20. The job description for Plaintiff's position states, "[n]egotiates and administers low risk contracts," while the descriptions for the comparators state that they "[n]egotiate[] and administer[] new contracts," or "complex, new contracts." DSUF ¶ 14 & Exs. E-H.

Plaintiff's only counter to this proffer is the presentation of her opinion that the classes she has taken "reasonably equate[]" to a "JD degree," and her belief (without firsthand knowledge) that she "has far longer TENURE, far more INHOUSE EXPERIENCE, had MORE RESPONSIBILITY in the same ROLE and performing the same JOB DUTIES and holding the same ACCOUNTABILITY for the position the Alleged Comparators were hired." ECF No. 38 at 1-2.

## II. STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is appropriate if the pleadings, the discovery, disclosure materials and any affidavits show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Taylor v. Am. Chemistry Council, 576 F.3d 16, 24 (1st Cir. 2009); Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006) (quoting Fed. R. Civ. P. 56(c)). A fact is material only if it possesses the capacity to sway the outcome of the litigation; a dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. Estrada v. Rhode Island, 594 F.3d 56, 62 (1st Cir. 2010). The evidence must be in a form that permits the court to conclude that it will be admissible at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "[E]vidence illustrating the factual controversy cannot be conjectural

---

General Dynamics account) also performed a "little bit" of procurement oversight. DSUF ¶ 18; ECF No. 35-3 at 17 ("[H]e did a little bit of the oversight, too, because we had such volume.").

or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve." Vasconcellos v. Pier 1 Imports (U.S.) Inc., C.A. No. 06-484T, 2008 WL 4601036, at *3 (D.R.I. Apr. 28, 2008). The "fact that there are conceivable inferences that could be drawn in Plaintiff's favor does not mean that those inferences are 'reasonable' enough to justify sending the case to the jury." Tavares v. Enter. Rent-A-Car Co. of R.I., No. CV 13-521 S, 2016 WL 6988812, at *2-3 (D.R.I. Nov. 29, 2016).

In ruling on a motion for summary judgment, the court must examine the record evidence in the light most favorable to the nonmoving party; the court must not weigh the evidence or reach factual inferences contrary to the opposing party's competent evidence. Tolan v. Cotton, 572 U.S. 650, 660 (2014). In employment cases, summary judgment is appropriate when the party opposing the motion "rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000); Bonilla v. Electrolizing, Inc., 607 F. Supp. 2d 307, 314 (D.R.I. 2009). The motion must be denied if there is sufficient evidence from which a reasonable jury could infer that the adverse employment action was based on discriminatory animus or that the employer's articulated reason is a sham and the true reason is discriminatory. Trainor v. HEI Hosp., LLC, 699 F.3d 19, 28 (1st Cir. 2012); Smith v. F.W. Morse & Co., 76 F.3d 413, 421 (1st Cir. 1996).

## III. LAW AND ANALYSIS

"To prevail on a claim under the EPA,[6] the plaintiff must first establish a prima facie case by showing that the employer paid different wages to specific employees of different sexes for

---

[6] The EPA provides, in relevant part, as follows:

> No employer . . . shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such

7

jobs performed under similar working conditions and requiring equal skill, effort and responsibility." Ingram v. Brink's, Inc., 414 F.3d 222, 232 (1st Cir. 2005); Rodriguez v. Smithkline Beecham, 224 F.3d 1, 6 (1st Cir. 2000); Jefferson v. Gates, No. CA 09-537 ML, 2010 WL 2927529, at *9 (D.R.I. July 2, 2010), adopted, 2010 WL 2927528 (D.R.I. July 22, 2010). "The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir.1989). Positions must be "substantially equal," and "where jobs are merely comparable, an action under the [EPA] will not lie." Lambert v. Genesee Hosp., 10 F.3d 46, 56 (2d Cir. 1993), overruled on other grounds by Greathouse v. JHS Sec. Inc., 784 F.3d 105 (2d Cir. 2015). The claimant must also show that she was employed in the same physical establishment as her male counterpart. Marcoux v. Maine, 797 F.2d 1100, 1103 (1st Cir. 1986); see 29 C.F.R. § 1620.9(a) ("each physically separate place of business is ordinarily considered a separate establishment"). If an alleged comparator has supervisory responsibilities and the EPA claimant does not, there is no *prima facie* case. Rodriguez, 224 F.3d at 6-7. The crucial question is whether a significant portion of the two jobs is identical, i.e., whether they require similar quality and quantity of production, education, relevant prior work experience, conduct, and skill. Brobst v. Columbus Servs. Int'l, 761 F.2d 148, 156 & n.1 (3d Cir. 1985).

If a plaintiff successfully establishes an EPA *prima facie* case, the burden shifts to the employer to establish, as relevant here, that different wages were paid pursuant to "a differential

---

establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).

based on any other factor other than sex." Rodriguez, 224 F.3d at 6. The "factor other than sex" is a "broad 'catch-all' exception and embraces an almost limitless number of factors, so long as they do not involve sex." Fallon v. Illinois, 882 F.2d 1206, 1211 (7th Cir. 1989) (citing Corning Glass Works v. Brennan, 417 U.S. 188, 197 (1974)). The justification for the wage differential "need not be a 'good reason,' but merely a gender-neutral one." Warren v. Solo Cup Co., 516 F.3d 627, 630 (7th Cir. 2008). "Under the EPA, differences in education and experience may be considered factors other than sex." Merillat v. Metal Spinners, Inc., 470 F.3d 685, 697 (7th Cir. 2006); see Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1322 (9th Cir. 1994) ("Employers may reward professional experience and education without violating the EPA.").

The decisional framework for Plaintiff's state-law unequal pay claims under RIWDA[7] and RICRA[8] has not yet been clearly settled by the Rhode Island Supreme Court. It may choose the EPA standard described above or it may rely on the familiar Title VII burden-shifting rubric set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004) ("intriguing questions" whether to use EPA or McDonnell Douglas standard to analyze RICRA unequal pay claim; no error in district court's

---

[7] RIWDA provides in relevant part as follows:

> No employer shall discriminate in the payment of wages as between the sexes or shall pay any female in his or her employ salary or wage rates less than the rates paid to male employees for equal work or work on the same operations.

R.I. Gen. Laws § 28-6-18(a).

[8] RICRA provides in relevant part as follows:

> All persons within the state, regardless of race, color, religion, sex, disability, age, or country of ancestral origin, have, except as is otherwise provided or permitted by law, the same rights to make and enforce contracts, to inherit, purchase, to lease, sell, hold, and convey real and personal property, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property, and are subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

R.I. Gen. Laws §§ 42-112-1.

9

use of McDonnell Douglas burden-shifting framework); Donilon v. City of Providence, No. PC 2004-5157, 2009 WL 3328492, at *4 (R.I. Super. July 13, 2009) (only reported RIWDA decision does not clarify what is decisional framework). However, as in Rathbun, there is no need to decide this "intriguing question" in this case. Both analytical guides point to the same conclusion – that Plaintiff has failed to proffer facts sufficient to establish that there is a trial-worthy issue on whether her compensation was tainted by gender-based discrimination.

The more plaintiff-friendly of the two approaches is the EPA test. Rathbun, 361 F.3d at 73. So I start there, at the first step, which requires examination of whether there is competent evidence from which a fact finder could conclude that Plaintiff was paid less than her four comparators for equal work. The undisputed record establishes that she has not cleared this *prima facie* bar as to any of them. For example, three of the four all had solo responsibility for one or more major account relationships while Plaintiff always worked on a single account under supervision. See Merillat, 470 F.3d at 695 (differing responsibility for "strategic planning" and supervision undermine *prima facie* case); Rodriguez, 224 F3d at 6-7 (differences in supervisory responsibilities and additional functions undermine *prima facie* case). The fourth worked in another country. See Marcoux, 797 F.2d at 1103 (work performed in different physical locations is not equal). With the immaterial exception noted in footnote 5, none of the four performed the procurement oversight function, which ranged from 50% to 70% of Plaintiff's work. See Thierry v. Schlulmberger Ltd., Civil Action No. 4:07-1086, 2008 WL 11504084, at *19 (S.D. Tex. Dec. 23, 2008) ("Two jobs are not equal if one position requires additional tasks and requires extra effort.").

Even if the Court were to assume a *prima facie* case, the EPA claim still fails because Plaintiff has presented nothing to controvert Defendants' undisputed evidence that the wage

differentials existed because of the wide educational and experiential discrepancies between her and the comparators, which amount to "reasons other than sex"; Defendants proffer interrogatory answers that explain why these education and experiential attainments were highly relevant in the context of the work in issue. See ECF No. 35-4 at 5-7 (e.g., "The Alleged Comparators' education levels empowered them to navigate the adversarial nature of contract management activities, and thus warranted higher compensation. . . . [A]dvanced education provided them greater credibility and enhanced skills in resolving these difficult, adversarial situations."). Thus, while Defendants may bear a heavy burden at the affirmative defense stage of an EPA case, they have not rested on nothing more than cursory citation to other cases where education or experience was successfully relied upon as a factor other than sex; rather, they have provided a "meaningful discussion of its relevance in these circumstances." Leach v. Elec. Research & Mfg. Coop., Inc., No. 15-1221, 2016 WL 6892797, at *5 (W.D. Tenn. Nov. 22, 2016).

Application of the McDonnell Douglas test yields the same conclusion. In this context, a *prima facie* case requires Plaintiff to "identify and relate specific instances where persons situated similarly 'in all relevant aspects' were treated differently." Molloy v. Blanchard, 115 F.3d 86, 91 (1st Cir. 1997). And if the employer meets the *prima facie* case with a "legitimate, non-discriminatory reason" for the pay disparity, Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 986 (1988), Plaintiff must then "demonstrate by a preponderance of the evidence that the legitimate reasons offered by the [employer] were a pretext for discrimination." Lakshman v. Univ. of Me. Sys., 328 F. Supp. 2d 92, 104 (D. Me. 2004). For the same reasons discussed above, Plaintiff has failed to identify persons situated similarly to her who were treated differently; nor is there any suggestion that CSC's decision to pay the comparators more in light

11

of their education, experience and ability to assume greater responsibility was a pretext for gender discrimination.

A final loose end: although the only claim clearly set out in the complaint is the allegation that Plaintiff was paid less for equal work based on her gender, during her deposition, Plaintiff testified that she also claims retaliation although it is difficult to ascertain from the testimony what are the contours of the claim. ECF No. 35-3 at 23 ("Because I kept pressing for [answers about why I was removed off the account and seeking information about my title change,] I could see [my supervisor]'s demeanor changing towards me."). In response to the deposition testimony, Defendants' attorney told Plaintiff on the record during her deposition: "the complaint does not state that." Id. With no allegation of retaliation, Defendants' motion for summary judgment did not try to rebut an unasserted claim. More recently, in her sur-reply, Plaintiff claims that her "last Performance Appraisal by new management clearly reflects there was an issue with Plaintiff's performance 'due to Plaintiffs issue with her salary and title.'" ECF No. 40 at 1. This new assertion of a retaliation claim raises an issue to which Defendants have not had an opportunity to respond.

The anti-retaliation provisions of RICRA make it unlawful "for an employer to discriminate against any of [its] employees . . . because [she] has opposed any practice made an unlawful employment practice . . . ." McElroy v. Fid. Invs. Institutional Servs. Co., Inc., 298 F. Supp. 3d 357, 366 (D.R.I. 2018) (alterations in original). For a *prima facie* retaliation claim, Plaintiff must establish 1) she engaged in protected conduct under the asserted statute, 2) she experienced an adverse employment action, and 3) there was a causal connection between the protected conduct and the adverse employment action. Id. Leniently read, Plaintiff's retaliation claim appears to be based on her perception that her persistent complaints about her job title and

salary caused her supervisor to "chang[e] towards [her]" and that her complaints were commented on adversely in her last performance appraisal. The Court is mindful that a plaintiff's retaliation claim may be viable even if her underlying discrimination claim is not. Schumacher v. Fairfield Resorts Inc., CA No. 05-500-T, 2008 WL 821569, at *22 (D.R.I. Mar. 27, 2008)

With the case now at the summary judgment phase, the fatal flaw in Plaintiff's out-of-time assertion of what seems to be a new claim is the dearth of evidence (or even argument) that Defendants took some adverse employment action against her as a result of her complaints. Id. at *23-24. Merely noting them in her Performance Appraisal is insufficient. Id. (entering plaintiff's making of complaints into her personnel file insufficient to constitute adverse employment action; summary judgment granted in favor of employer). Nor is there evidence that Plaintiff's complaints were "sufficiently clear and detailed for a reasonable employer to understand [them], in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Mayer v. Prof'l Ambulance, LLC, 211 F. Supp. 3d 408, 415 (D.R.I. 2016) ("[N]ot all abstract grumblings will suffice to constitute the filing of a complaint with one's employer."). Based on these deficiencies, I have not directed that the briefing be reopened on this motion (which has been pending since September 2019) to require Defendants to respond to the sur-reply; instead, for the reasons stated above, I rest on the finding that Plaintiff's claim of retaliation as articulated in her sur-reply lacks sufficient heft to give rise to a trial-worthy issue.

Based on this examination of the summary judgment evidence, I conclude that Plaintiff's complaint fails to survive Fed. R. Civ. P. 56 scrutiny and recommend that judgment enter in favor of Defendants on all of Plaintiff's claims.[9]

## IV. CONCLUSION

Based on the foregoing, I recommend that Defendants' Motion for Summary Judgment (ECF No. 34) be granted and that judgment enter in favor of Defendants on all of Plaintiff's claims. I further recommend that judgment should enter in favor of DXC on Count I. Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 28, 2020

---

[9] In light of this recommendation, there is no need for the Court to reach Defendants' other arguments, particularly its statute of limitations defense, which would require this Court to determine unsettled issues of Rhode Island law. One exception: I urge the District Court to sustain DXC's contention, supported by the declaration of its "Manager, Employee Relations," that the claims against it should be dismissed because it is the parent of CSC, but not Plaintiff's employer. It is well settled that EPA claims "require the existence of an employer-employee relationship." Garman v. Helix Energy Sols. Grp., Civil Action No. 11-2341, 2012 WL 458822, at *2 (E.D. La. Feb. 13, 2012). Similarly, RIWDA addresses the conduct only of the "employer." R.I. Gen. Laws § 28-6-18(a). As to RICRA, Plaintiff's pleading is devoid of any allegations of actionable conduct by DXC; nor has she proffered anything permitting the inference either of actionable conduct or of an "integrated enterprise" in her opposition to DXC's motion or in her sur-reply. See Russell v. Enter. Rent-A-Car Co. of R.I., 160 F. Supp. 2d 239, 255-56 (D.R.I. 2001) (in Civil Rights Act case, court determines whether parent of employer may be sued by examining evidence of parent's actual involvement in events in issue, including control over employment decisions or by integrated enterprise test, which depends on evidence of interrelation of operations, common management, centralized control of labor operations, and common ownership).

14